UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| IN RE:     LYNETTE R. GREENE,  | Case No. 06-33611-KRH |
|  | Chapter 13 |
| Debtor. | |
| _____ | |
| LYNETTE R. GREENE, | |
| Plaintiff | |
| v. | Adv. Pro. No. 07-03004-KRH |
| EAST COAST MARKETING, INC., | Adv. Pro. No. 07-03018-KRH |
| Defendant | |
| _____ | |

## MEMORANDUM OPINION

This case is before the Court on various motions filed by the parties in two related adversary proceedings. Hearing on all motions was conducted on April 11, 2007 (the "Hearing"), after which the Court took the matters under advisement. For reasons set forth below, the motion of Defendant East Coast Marketing, Inc. ("East Coast") to Dismiss will be denied as will its motion for summary judgment. The cross-motion for summary judgment filed by the Debtor will be deferred.

The Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

## FACTS

The facts underlying the dispute between the parties are neither complicated nor in dispute. This matter arises from a 1997 real estate transaction between the parties. The facts as

alleged by the Debtor Lynette R. Greene (the "Debtor")[1] are that on or about December 12, 1997, the Debtor and East Coast entered into a contract for the Debtor's purchase and East Coast's sale of a piece of real property located at 907 Marblethorpe Road, Chesterfield, Virginia (the "Property"). The contract (the "Purchase Agreement") consisted of the initial purchase agreement together with two addenda. The Purchase Agreement contemplated that the seller would provide financing for the acquisition of the Property. One addenda to the Purchase Agreement contained language that "Purchaser will sign a Deed in Lieu of Foreclosure."

On January 15, 1998, in conjunction with the closing on the sale of the Property (the "Closing), the parties executed a purchase-money wrap-around deed of trust (the "Deed of Trust") for the Property. The Deed of Trust secured a wrap-around deed of trust note (the "Note") of the same date in the amount of $73,950.00.[2] As part of the Closing, the Debtor also executed and delivered to East Coast a deed in lieu of foreclosure (the "Deed in Lieu"). East Coast asserts that it would not have entered into the Purchase Agreement with the Debtor and would not have provided the owner financing at Closing without the Deed in Lieu[3] (a fact that for purposes of this hearing only, the court accepts as true).

After the execution of the Closing documents, East Coast's attorney gave the original, executed Deed in Lieu to the president of East Coast. The Debtor received an unexecuted copy of the Deed of Trust and the Note from East Coast's attorney. The Debtor contends that she did

---

[1] The Debtor's allegations are set forth in the amended complaint she filed in Case No. CL06-1338 in the Circuit Court of Chesterfield County, Virginia, an action now removed to this Court. *See* the Procedural History portion of this Opinion.

[2] The Note provided that the Debtor's obligation thereunder was subordinate to a first deed of trust on the Property and that East Coast was obligated to pay the note secured by that first deed of trust.

[3] A deed in lieu of foreclosure is generally executed by the mortgagor in favor of the mortgagee. On its face, the deed in lieu of foreclosure unconditionally conveys title to the mortgagee. The mortgagee or his agent will hold the deed until a specified triggering event occurs and, upon the occurrence of that event, will cause the deed to be recorded. This obviates the necessity of a foreclosure. *See generally* John C. Murray, *Mortgage Workouts: Deeds in Escrow,* 41 Real Prop. Prob. & Tr. J. 185 (2006).

2

not receive a copy of the Deed in Lieu. The Debtor alleges further that the legal effects of the Deed in Lieu were not explained to her. For the reasons enumerated below, the Court has not taken into consideration the Debtor's allegations in either of these two regards. There is no dispute that all Closing documents were prepared by the attorney for East Coast. There is also no dispute that the Debtor was not otherwise represented by counsel at the Closing.

Under the terms of the Note, the Debtor was obligated to pay monthly installments of principal and interest on the first day of each month. The Note provided that in an event of default of the Note or in an event of default of the Deed of Trust, the entire amount of principal on the Note, together with all interest then accrued, would become due and payable at the option of East Coast. On January 11, 2006, East Coast claimed that the Debtor had defaulted in making her payments under the Note (a fact that for purposes of this hearing only, the Court will accept as accurate). East Coast thereupon put the Debtor on notice that if the full amount of the Note was not paid by January 25, 2006, it would proceed to record the Deed in Lieu that it had been holding for the past eight years. East Coast recorded the Deed in Lieu on January 30, 2006, when the Debtor failed to pay the balance of the Note.

## **PROCEDURAL HISTORY**

Beginning in March 2006, the parties filed a series of actions and proceedings in the Virginia state court system in Chesterfield County, Virginia, wherein (1) East Coast instituted eviction proceedings against the Debtor based upon its recordation of the Deed in Lieu and (2) the Debtor claimed that the Deed in Lieu was invalid under Virginia law. Eventually, all of the separate actions and proceedings were consolidated in August 2006. The resulting consolidated state court cases are referred to hereafter as "the State Court Action."

The circuit court issued a temporary injunction on July 31, 2006, that permitted the Debtor to remain in possession of the Property subject to the final disposition of the State Court Action. The circuit court also required the Debtor to make payments into the clerk of the circuit court for the purpose of protecting the parties' interests pending that court's ruling. An evidentiary hearing was conducted by the circuit court on September 13, 2006. A final ruling, however, was never rendered in the State Court Action, as that litigation was stayed when the Debtor filed her voluntary petition under Chapter 13 of the Bankruptcy Code on December 30, 2006 (the "Petition Date").

Almost immediately after filing her Chapter 13 bankruptcy case, the Debtor filed an adversary proceeding against East Coast in this Court seeking to avoid the transfer of the Property pursuant to the Deed in Lieu as an impermissible fraudulent conveyance under 11 U.S.C.A. § 548. The case was assigned Adv. Pro. No. 07-3004-KRH (the "Fraudulent Conveyance Action"). At about the same time, East Coast filed a motion in the Debtor's bankruptcy case for relief from the automatic stay, seeking authority to proceed with State Court Action in the circuit court. At a hearing held on January 31, 2006, the Court denied East Coast's motion for relief from the automatic stay to pursue the State Court Action in the circuit court, but it allowed the Debtor to timely remove the State Court Action to this Court. The State Court Action was removed to this Court on March 14, 2007, as Adv. Pro. 07-03018-KRH (the "Removed Action").[4]

On February 20, 2007, East Coast filed its motion to dismiss the Fraudulent Conveyance Action. In the alternative, East Coast moved to strike certain portions of the complaint in that action that it deemed to be immaterial and impertinent.

---

[4] The Court required as a condition to the denial of the lift stay motion and as a condition to removal of the State Court Action that the Debtor continue to make the payments mandated by the circuit court pursuant to its injunction order. Future payments were directed to be made to the Chapter 13 Trustee.

On March 20, 2007, East Coast further moved the Court for a ruling in the Removed Action on certain of the outstanding issues that had been pending in the state court prior to the removal of the State Court Action. Those issues were contained in the "Demurrer, Special Pleas, Motions, Answer and Affirmative Defenses to Complaint" (the "Special Pleas") filed in the State Court Action on June 15, 2006. In addition, on March 21, 2007, East Coast filed a motion for summary judgment in the Removed Action. On April 1, 2007, the Debtor filed a cross-motion for summary judgment.

The Court consolidated the Removed Action with the Fraudulent Conveyance Action for the purposes of trial. The Court then conducted the Hearing on (i) East Coast's motion to dismiss the Fraudulent Conveyance Action, (ii) East Coast's motion for ruling on the Special Pleas in the Removed Action, and (iii) East Coast's motion for summary judgment and the Debtor's cross-motion for summary judgment in the Removed Action. The Court now considers the matters under advisement.

## **ISSUES PRESENTED BY THE PARTIES**

East Coast argues that it is entitled to summary judgment in the Removed Action because when the Debtor allegedly defaulted on the terms of the Note, East Coast then recorded the Deed in Lieu, which had the legal effect of divesting the Debtor of any rights in the property. Therefore, it argues that the Debtor has no defense to the unlawful detainer claim.

The Debtor, in support of her cross-motion for summary judgment in the Removed Action and in response to the motion of East Coast for summary judgment, argues that the execution of the Deed in Lieu was not done for adequate consideration and that it improperly

extinguished her right of redemption in the Property.[5] Accordingly, she argues, the Deed in Lieu is invalid and East Coast had no basis in law to cause her to be removed from the Property.

The Debtor asserts in the Fraudulent Conveyance Action that she received no reasonably equivalent value in exchange for the transfer of the Property to East Coast pursuant to the Deed in Lieu and that she became insolvent as a result of the transfer. The Debtor bases her complaint upon 11 U.S.C.A. § 548(a)(1)(B).

In its motion to dismiss the Fraudulent Conveyance Action, East Coast argues that the underlying transfer occurred earlier than two years preceding the filing of the Debtor's bankruptcy petition. Further, it argues that there was valid consideration for execution of the Deed in Lieu, as without it, East Coast would not have provided the seller financing for the sale of the Property.

## **CONCLUSIONS OF LAW**

On the face of the pleadings, the Debtor has alleged each of the elements of § 548(a)(1)(B) of the Bankruptcy Code.[6] Avoidance of the recordation of the Deed in Lieu as a fraudulent conveyance would effectively resolve all of the matters presented by the parties in the

---

[5] Redemption is the right, following default or acceleration of a debt, but before the sale of the property, for a debtor to pay the indebtedness owed, and thus require the secured party to free the land of the encumbrance, mortgage or lien. *See Abdelhaq v. Pflug*, 82 B.R. 807, 809 (E.D. Va. 1988) ("After acceleration of the debt and before sale, the debtor has an 'equity of redemption.'") (citing *In re Rolen*, 39 B.R. 260, 263 (Bankr. W.D. Va. 1983)).

[6] That section provides in relevant part:
(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
. . .
(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; . . .

11 U.S.C.A. § 548(a)(1)(B).

State Court Action as well as in the Fraudulent Conveyance Action. Therefore, the Court will first address the motion to dismiss filed by East Coast in the Fraudulent Conveyance Action.

The standard to be applied in ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), as made applicable by Federal Rule of Bankruptcy Procedure 7012(b), is well established. This Court will accept all factual allegations in the Amended Complaint as true, construe the Amended Complaint in a light most favorable to the plaintiff, and recognize that dismissal is inappropriate "unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Baird v. Rose,* 192 F.3d 462, 467 (4th Cir. 1999) (citation omitted); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) ("A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.").

The key issues before the Court in the Fraudulent Conveyance Action are: whether a transfer took place within the statutory two-year period preceding the Petition Date; and, if so, whether the Debtor received less than a reasonably equivalent value in exchange for such transfer.

The term "transfer" found in § 548 of the Bankruptcy Code is used in the "most comprehensive" sense. It is intended to include every means and manner by which property can pass from ownership and possession of another. Any transaction that reduces or extinguishes valuable legal rights is subject to avoidance. *Schnelling v. Crawford (In re James River Coal Co.),* Adv. Pro. No. 05-03550, 2007 WL 438244, at *15 (Bankr. E.D. Va. Feb. 8, 2007) citing *Weaver v. Kellogg*, 216 B.R. 563, 573 (S.D. Tex. 1997); and *Besing v. Hawthorne (In re Besing)*, 981 F.2d 1488, 1492 (5th Cir. 1993). The term encompasses involuntary as well as voluntary transfers. The 1984 amendments to the Bankruptcy Code expanded the definition of "transfer"

7

to specifically include foreclosure of the debtor's equity of redemption. *BFP v. Resolution Trust Co.*, 511 U.S. 531, 543 n.7 (1994).[7] Thus, the relinquishment of the Debtor's right to redemption effected by the recordation of the Deed in Lieu was a transfer of an interest of the Debtor in property.

East Coast argues that the Debtor relinquished that right of redemption back in January of 1988, when the Debtor executed the Deed in Lieu as contemplated by the Purchase Agreement. East Coast maintains that the Debtor cannot avoid the transfer under 11 U.S.C § 548 because the transfer was made outside the two-year period preceding the Petition Date. The Bankruptcy Code governs the time when the transaction is deemed to have occurred. Section 548(d)(1) provides that

> A transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee. . .

11. U.S.C.A. § 548(d)(1). Under that provision, perfection is the key in determining when a § 548 transfer has occurred. Pursuant to Virginia common law and § 55-96 of the Code of Virginia (the law "applicable" in this case), the holder of an unrecorded deed has not perfected it as against creditors of the transferor. *Slater v. Moore,* 86 Va. 26, 9 S.E. 419 (1889) (A deed is void as against creditors "until and except from the time it is duly admitted to record.") (citing a Virginia statutory precursor to Va. Code Ann. § 55-96 (2006)); *Price v. Wall's Ex'r.*, 97 Va. 334, 33 S.E. 599 (1899) (An unrecorded deed is void as to all creditors); *Ameribanc Sav. Banks, F.S.B. v. Resolution Trust Corp.* 858 F.Supp. 576 (E. D. Va. 1994). Nor has the holder of an unrecorded deed perfected it as to a subsequent purchaser for value without notice. Va. Code

---

[7] Similarly, the changes enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8 (BAPCPA) to 11 U.S.C. § 101(54) did not serve to diminish in this regard the scope of the definition of the term "transfer."

Ann. § 55-96 (2006); *Kiser v. Clinchfield Coal Corp.*, 200 Va. 517, 106 S.E.2d 601 (1959); *Lee v. Midfirst Bank (In re Lee),* Case No. 04-39257, 2005 Bankr. LEXIS 1203 (Bankr. E.D. Va. February 11, 2005). The date that the Deed in Lieu was recorded is the transfer date for purposes of § 548(a)(1) of the Bankruptcy Code. It is not the date of execution of the instrument as advanced by East Coast. The recordation date was January 30, 2006, well within the two-year statutory period preceding the Petition Date within which a fraudulent conveyance may be recovered.

Having determined (i) that a transfer occurred and (ii) that the transaction at issue took place within the fraudulent conveyance avoidance period, the Court must determine whether the Debtor received less than reasonably equivalent value in exchange for the transfer.

Courts generally hold that when a mortgagor executes a deed in lieu of foreclosure as part of the initial mortgage transaction with instructions that the mortgagee can record the instrument immediately in the event of a future default, the deed is void and unenforceable. In every case save one,[8] such arrangements have been deemed unenforceable under general equitable and public policy principles.[9] The Restatement reaffirms this general prohibition against "clogging"

---

[8] Although not cited by either party, the Court notes that it did find one case to the contrary. *See, Gormas v. Permanent Sav. & Loan Assoc.*, No. CA84-03-035, 1984 WL 3444, at *2 (Ohio Ct. App. Oct. 15, 1984). However, it appears that the holding in this case by Ohio's intermediate court of appeals subsequently was not followed in *Panagouleas Interiors v. Silent Partner Group, Inc.*, No. 18864, 2002 WL 441409, at *12 (Ohio Ct. App. Mar. 22, 2002).

[9] *Guam Hakubotan, Inc. v. Furusawa Inv. Corp.*, 947 F.2d 398, 401 (9th Cir. 1991) ("[A] mortgagor is not permitted to alienate his right of redemption at the time he enters into a mortgage agreement."); *Pollak v. Milsap*, 122 So. 16, 20-22 (Ala. 1928) (holding that transaction involving loan of money secured by deed is enforceable as mortgage); *Hamud v. Hawthorne*, 338 P.2d 387, 390 (Cal. 1959) (ruling that deed in escrow was unenforceable because it was entered into at time of original loan); *MacArthur v. N. Palm Beach Util., Inc.*, 202 So. 2d 181, 188 (Fla. 1967) ("A mortgagor cannot, by any agreement made contemporaneously with or as a part of the mortgage transaction, bind himself not to assert his right or equity of redemption. . . ."); *Lewis Broad.Corp. v. Phoenix Broad.Partners*, 502 S.E.2d 254, 256 (Ga. Ct. App. 1998) (holding that an option to purchase collateral for a fixed price upon default, which was entered into as part of original secured loan, was impermissible clog on borrower's right of redemption); *Panagouleas Interiors v. Silent Partner Group, Inc.*, No. 18864, 2002 WL 441409, at *12 (Ohio App. Mar. 22, 2002) ("Ohio law is consistent with the accepted rule that 'a mortgagor's equity of redemption cannot be clogged[,] and that he cannot, as part of the original mortgage transaction, cut off or surrender his right to redeem.'" (quoting *Humble Oil & Ref. Co. v. Doerr,* 303 A.2d 898, 905 (N.J. Ch. 1973))); *Lincoln Mortgage*

a borrower's equity of redemption: "Under [the clogging] rule, no agreement contained in [a] mortgage, or contemporaneous with it, [can] cut off a delinquent mortgagor's equity of redemption without resort to foreclosure by the mortgagee. Thus the equity courts refused to enforce attempts by a mortgagee, at the inception of the mortgage transaction, to have the mortgagor waive the right to insist on foreclosure in the event of a default." Restatement (Third) of Prop.: Mortgages § 3.1 cmt. a (1997). The Introduction to the Restatement refers to the mortgagor's equity of redemption as "the basic and historic right of a debtor to redeem the mortgage obligation after its due date, and ultimately to insist on foreclosure as the means of terminating the mortgagor's interest in the mortgaged real estate." *Id*. ch. 3, introductory note. See also 1 Grant S. Nelson & Dale A. Whitman, Real Estate Finance Law § 3.1 (4th ed. 2002).

East Coast relies on the case of *Ringling Joint Venture II v. Huntington National Bank,* 595 So.2d. 180 (Fla. Dist. Ct. App. 1992), in support of its position that its Deed in Lieu is valid. In *Ringling,* the deed in lieu of foreclosure was delivered in connection with a subsequent workout of a delinquent loan and as part of the mortgagee's agreement not to foreclose or to exercise other contractual or legal remedies. Under these circumstances, the Court in *Ringling* found:

> It is clear that this agreement [the deed in lieu] was given to avoid foreclosure and that *Ringling received valuable new consideration to relinquish its right of redemption.* If we examine the underlying policy for the doctrine against clogging the right of redemption, it is obvious that this agreement was intended to assist Ringling at the time of the earlier foreclosure and was not an unfair scheme to take Ringling's equity in the property or its right of redemption.

---

*Investors v. Cook,* 659 P.2d 925, 927 (Okla. 1982) ("Simply stated, the [clogging] doctrine voids any provision in an original mortgage agreement limiting or modifying the right of redemption by payment of the full mortgage debt after default for any reason."); *Kartheiser v. Hawkins*, 645 P.2d 967, 968 (Nev. 1982) (holding that in quiet-title action by third party who took title to encumbered property, quitclaim deeds given by mortgagor to mortgagee at time of delivery of deeds of trust were merely further security for mortgage loan and did not surrender grantor's equity in properties); *Marple v. Wyo. Prod. Credit Ass'n*, 750 P.2d 1315, 1320 (Wyo. 1988) (holding that deed held in escrow that was to be conveyed upon default was in fact a mortgage and could not terminate mortgagor's right of redemption).

10

*Ringling,* 595 So. 2d at 183 (emphasis added).

Courts are more inclined to uphold deeds in lieu of foreclosure in the context of a workout. This is especially true in cases where a sophisticated commercial borrower is involved, where there is no disparity in bargaining power and negotiating strength, where the borrower is represented by knowledgeable counsel, where there is an acknowledged loan default, where there is little or no equity in the mortgaged property, and where there is actual and meaningful consideration for the deed in lieu of foreclosure such as a forbearance agreement or a release of personal liability. *See*, John C. Murray, *Mortgage Workouts: Deeds in Escrow,* 41 Real Prop. Prob. & Tr. J. 185 (2006). "There are valid policy considerations that are furthered by deed-in-escrow transactions as part of a loan workout and that should be encouraged by the courts, including out-of-court settlements of disputed matters and avoidance of the time and expense (and publicity) of protracted and contested foreclosure and bankruptcy proceedings. But the courts rightfully remain highly protective of borrowers when most or all of these factors are not present." *Id.* at 193-94. The holding in *Ringling* is entirely consistent with this approach. But no such facts are present in the case at bar.

The law in Virginia regarding the validity of a deed in lieu of foreclosure appears to be entirely consistent with the holdings of the overwhelming majority of the courts in the other states that have considered the matter. The Supreme Court of Virginia initially confronted the question concerning the validity of a deed in lieu of foreclosure in 1877, in the case of *Snavely v. Pickle*, 70 Va. 27, 1877 WL 6254 (1877). That case established the concept that the equity of redemption was an "inseparable equitable incident of every mortgage." 1877 WL at *5. The court explained that while an irredeemable mortgage is a legal solecism, this did not necessarily mean that the mortgagee could never become the purchaser of the equity of redemption from the

mortgagor, thus combining the legal and equitable estates. Such a "purchase [can] be valid, if, under the jealous scrutiny of a court of equity, it is shown to be for an adequate consideration, that no undue advantage has been taken of the necessities of the mortgagor, and that it is in all respects fair. *Id.* at 35. *See also West v. Reed,* 55 Ill. 242, 1870 WL 6410, at *2 (1870) ("It is settled beyond controversy, that contracts between mortgagor and mortgagee, for the purchase or extinguishment of the equity of redemption, are regarded with jealousy by courts of equity, and will be set aside if the mortgagee has, in any way, availed himself of his position to obtain an advantage over the mortgagor.").

The issue lay dormant in Virginia until the recent case of *Dawson v. Perry*, 30 Va. Cir. 372, 1993 WL 946058 (Va. Cir. Ct. 1993), wherein the Circuit Court for the City of Richmond, Virginia faced facts remarkably similar to those presented in this case. Ms. Dawson purchased a residence from Mr. Perry, and at closing, she executed a deed of trust in favor of Mr. Perry. On the same date, she executed a deed in lieu of foreclosure and a letter agreeing that the deed in lieu of foreclosure would be recorded should she become delinquent in her payments by two months. When Ms. Dawson subsequently did become delinquent by two months, Mr. Perry recorded the deed in lieu of foreclosure.

In addressing whether the deed in lieu of foreclosure was valid, the court stressed that under the standard set forth in *Snavely v. Pickle*, a party may in fact convey away his equity of redemption if the conveyance was for an adequate consideration, if no undue advantage was taken of the mortgagor, and if the transfer was fair in all respects. *Id*. at *5. In *Dawson v. Perry,* the court held that the equity of redemption had been impermissibly extinguished when it was conveyed away as part of a single real estate transaction.

12

East Coast argues that the instant case differs from *Dawson v. Perry* because the Purchase Agreement required the execution of the Deed in Lieu and, therefore, more than one real estate transaction was involved in this case. It further argues that without the execution of the Deed in Lieu, East Coast would not have entered into the transaction. This argument was also made by the lender in *Dawson v. Perry*. In rejecting that argument, the court there remarked:

> In fact Mr. Perry himself asserts that the consideration for this deed in lieu of foreclosure was his providing financing for Ms. Dawson, who had a poor credit history. However, his financing was also the consideration for Ms. Dawson's executing the deed of trust in his favor. He stated that without the deed in lieu of foreclosure, he would not have provided financing. This is significant, because it recognizes the unitary nature of the transaction. The deed in lieu was required for Ms. Dawson to obtain the financing in the first instance. . . .

*Id.* at *3.

In the course of a typical residential real estate transaction, the purchaser first executes a contract to purchase the realty and then "closes" the transaction by executing various closing documents. These often include a note and deed of trust in favor of a lender to help finance the acquisition. In return for the contractually agreed purchase price, the seller tenders an executed deed conveying the property. The term "close" suggests that this is one single transaction: that the execution of the closing documents together with the delivery of the deed finishes the deal that the contract to purchase had initiated. East Coast's argument that these are two separate transactions is unpersuasive.

Generally, the deed and the sales contract merge when the deed is executed. The deed is considered to be an instrument of "higher dignity," *Empire Mgmt. & Dev. Co., Inc. v. Greenville Assoc.*, 255 Va. 49, 52, 496 S.E.2d 440, 442 (1998), and therefore memorializes the final agreement of the parties "and all prior agreements, oral or written, are merged into the deed of

13

conveyance." 255 Va. at 52, 496 S.E.2d at 442. *See also* 1 Michie's Jurisprudence of Virginia and West Virginia, Deeds, § 107 (2004). This merger doctrine further confirms that the execution of each of the several closing documents required for the purchase of real estate is part of a transaction that is unitary in nature.

The Court therefore determines that there was only one real estate transaction involved with the Closing and that by this unitary transaction, the Debtor conveyed away her equity of redemption in the Property. Under the analysis of *Dawson v. Perry*, the execution of the Deed in Lieu was made without consideration and was an impermissible alienation of the Debtor's equity of redemption. Thus, the transfer of the Debtor's equity of redemption that was effected by the recordation of the Deed in Lieu on January 30, 2006, was made without consideration. As there was no consideration for the transfer, it cannot have been made for "reasonably equivalent value" as a matter of law, and the transfer may be subject to avoidance under § 548 of the Bankruptcy Code.[10]

Having found (i) that the Debtor's disposition of her right to an equity of redemption was a transfer of an interest in property, (ii) that the transfer occurred within the two-year period proceeding the Petition Date, and (iii) that the transfer was made (as a matter of law) for less than reasonably equivalent value, the motions of East Coast to dismiss the Fraudulent Conveyance Action and for summary judgment will be denied. The factual issue of insolvency

---

[10] East Coast argued at the Hearing that the contractually stipulated satisfaction of the remaining outstanding balance due under the Note should be construed to be reasonably equivalent value for the recordation of the Deed in Lieu. This argument is inconsistent with the Supreme Court's holding in *BFP v. Resolution Trust Co.*, 511 U.S. 531 (1994). It appears that substantial equity may have existed in the Property at the time that the Deed in Lieu was recorded. The recording receipt attached to the Deed in Lieu shows the Property had an assessed value of $107,400 while the balance of the loan was only $71,128.78. This latter fact would tend to militate against the augment advanced by East Coast that the transfer was made for equivalent value. Given the Court's ruling, no consideration has been given at this stage of the proceeding to any resulting forfeiture of equity that may have occurred from the transfer of the Property.

is the lone issue remaining in the Fraudulent Conveyance Action.[11] The resolution of that issue is reserved for trial. The Court will suspend consideration of Debtor's cross motion for summary judgment in the Removed Action until such time as this sole remaining issue of material fact in the Fraudulent Conveyance Action has been resolved.

In making this ruling, the Court is cognizant of the assertions by the Debtor that she was not informed as to the effect of the Deed in Lieu. If the attempted transfer of the Debtor's right of redemption had been made for separate consideration, the Court would then have been required to engage in further inquiry to ascertain whether the transaction was fair in all respects. *Dawson v. Perry*, 1993 WL 946058 at *3, *Snavely v. Pickle*, 70 Va. at *5. However, since there was no consideration at all for the Debtor's surrender of her equity of redemption, inquiry into the fairness of the transaction is not necessary.

If the recordation of the Deed in Lieu is avoided as a fraudulent conveyance under § 548, the Court will need to address § 550 of the Bankruptcy Code to resolve the other issues remaining in the Fraudulent Conveyance Action. Any such inquiry is premature, however, until the transfer of the property has been avoided. If the Court concludes that the Debtor was not insolvent or rendered insolvent by the recordation of the Deed in Lieu, and therefore that the transfer is not subject to avoidance as a fraudulent conveyance, then the Court will undertake to resolve the Debtor's alternative Removed Action contentions, all of which will be reserved for trial.

---

[11] The Debtor argued at the Hearing that the Court should resolve the insolvency issue by taking judicial notice of the Debtor's schedules that represented the Debtors liabilities to be far in excess of her assets. While the Court can take judicial notice of the schedules filed in this case, such notice does not thereby render the information set forth therein admissible  As the schedules in this context are offered to prove an out of court declaration, they are inadmissible hearsay for which no exception exists. *See* Barry Russell, *Bankruptcy Evidence Manual*, § 201.5 (West 2007) ("There exists a mistaken notion that [taking judicial notice of a court's own records] means taking judicial notice of the truth of facts asserted in every document in a court file. . . . However, a court may not take judicial notice of hearsay allegations as being true merely because they are part of a court record or file.").

Finally, the Court considers the motion to strike and the request of East Coast that its Special Pleas in the Removed Action be addressed. The Court agrees with East Coast that the Debtor's conclusory allegations of tortious or fraudulent activity are irrelevant to Plaintiff's claim under 11 U.S.C. § 548(a)(1)(B). As such allegations are immaterial to the Fraudulent Conveyance Action, they will not be considered by the Court as part of that proceeding.

The Court evaluates the Special Pleas in light of its conclusion that the transfer effected by East Coast's recordation of the Deed in Lieu may be subject to avoidance under § 548 of the Bankruptcy Code. The Court considers the demurrer to be a motion to dismiss. As such it will be denied on the same grounds as was East Coast's motion for summary judgment. The Court will not revisit the prior rulings of the circuit court, which will hereby be adopted by this Court.[12] Accordingly, the Court will not entertain Debtor's claims for exemplary or punitive damages. All other issues in the Special Pleas not otherwise addressed and resolved herein or by the Circuit Court of Chesterfield County are reserved for trial.

Separate orders in accordance with this opinion will be entered in these Adversary Proceedings.

ENTERED: _____

       /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

---

[12] Plaintiff asserted claims in the circuit court based on actual fraud and requested punitive damages, but those claims were dismissed after a hearing upon East Coast's Demurrer.

Copies to:

Audrey Freeman jaCobs
2214 East Marshall St
P. O. Box 7970
Richmond, VA 23223-0170

Lisa Taylor Hudson
William A. Gray
Sands Anderson Marks & Miller
P. O. Box 1998
801 East Main Street, Suite 1800
Richmond, VA 23218-1998

Robert E. Hyman
P.O. Box 1780
Richmond, VA 23218-1780

Robert B. Van Arsdale
Office of the United States Trustee
600 East Main Street, Room 301
Richmond, VA  23219